UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HIRSCH,

    Plaintiff,

v.                                                      Case No. 07-10887

AZ AUTOMOTIVE CORP.,                HONORABLE AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This is an employment case. Plaintiff Michael Hirsch (Hirsch) is suing his employer defendant AZ Automotive Corporation (AZ Automotive) claiming age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, and Michigan's Elliot Larsen Civil Rights Act, M.C.L. § 37.2202(1)(a).

Before the Court is AZ Automotive's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

II. Background

The material facts as gleaned from the parties' papers follow.

On June 1, 1981, Hirsch was hired by Aetna Industries[1] as a Die Maker. The

---

[1]In 2002, Aetna Industries merged with a company called Zenith and formed AZ Automotive. For clarity, the Court shall refer to defendant only as AZ Automotive.

1

terms and conditions of his employment were governed by a collective bargaining agreement (CBA) between his employer and a union. On March 19, 1991, Hirsch was promoted to the position of Die Maker Leader. In 1999, as a result of a new CBA which will be explained, his position was renamed Die Maker/Tryout Troubleshooter (Tryout Troubleshooter). As both a Die Maker and Tryout Troubleshooter, Hirsch reported to the Toolroom Manager. Tryout Troubleshooters are considered more skilled than Die Makers, earning $1.00 more per hour and also responsible in filling out requisitions for the toolroom and ensuring that the toolroom is adequately stocked.

In 1999, AZ Automotive negotiated a new CBA with UAW Local 155 for its skilled trade employees, which included Hirsch. The CBA, referred to in the papers as the STT Agreement, was only for skilled trade employees. Skilled trade employees were given the option of remaining under the former CBA or being governed by the STT Agreement. Hirsch opted to be covered by the STT Agreement. As a result, on April 2, 1999, his position was renamed to Tryout Troubleshooter. Toolroom Manager, Joe Swafford, became Hirsch's supervisor.

Under the STT Agreement, an employee's date of entry into the Die Maker position establishes the employee's seniority date for purposes of layoff, recall, and other CBA rights. A promotion to Tryout Troubleshooter does not affect an employee's seniority date. The STT Agreement also provides that an employee may be promoted to or demoted from the Tryout Troublemaker position within AZ Automotive's discretion and without regard to seniority.

In approximately 2002, AZ Automotive spent $2.5 million automating its production lines by adding robotics. Between 2003 and 2006, AZ Automotive removed

2

several production lines due to a decrease in production.  The addition of the robotics and removal of production lines reduced the need for production employees and a corresponding reduction in the need for skilled trades and repair employees.  This resulted in layoffs.  The decline in the automotive industry as a whole also decreased the needs for employees at both the production and skilled level.  From 2001 to 2006, the number of skilled trade employees was reduced from 104 to 48.  The layoffs for skilled employees were more pronounced at the Die Maker and Tryout Troubleshooter positions.  In 2001, AZ Automotive employed 76 Die Makers and Troubleshooters.  As of filing its motion for summary judgment, AZ Automotive employs only 1 Die Maker and 16 Tryout Troubleshooters.

In December 2005, Swafford decided to modify toolroom policies due in part, according to Swafford's deposition testimony, to Hirsch's behavior.  According to Swafford, Hirsch would often "hide out" in the toolroom to avoid work.

In February 2006, Swafford made the decision to demote Hirsch, and three other employees he believed to have the lowest performance, from Tryout Troubleshooters to Die Makers, effective February 6, 2006.  The other employees were Marvin Gustafson, Tom Scharf,[2] and David Gosselin.  Following the demotions, Scharf and Gosselin were laid off immediately since they had the least seniority.  Scharf was 43 years old at the time and Gosselin was 42 years old.  Both Hirsch, then 57, and Gustafson, were significantly older than Scharf and Gosselin and the only employees under the STT

---

[2]Hirsch apparently attended a meeting regarding Scharf's demotion at which Scharf accused Swafford of allowing his "friends" to remain in the Tryout Troubleshooter position, specifically referred to a Bill Koza, who was 62 years old at the time.

3

Agreement retained in the Die Maker classification after February 6, 2006.

According to Swafford, Hirsch's attitude and work ethnic were the most serious problems. Swafford says he had to talk to Hirsch about why he had not completed his daily tasks and had to routinely assign Hirsch's uncompleted tasks to the next shift. Swafford also says that Hirsch did not regularly complete requisitions for the toolroom which resulted in Swafford having to complete them.

On February 24, 2006, Hirsch and Gustafson were laid off due to a decrease in business and lack of work. On April 10, 2007, Gustafson was recalled to the Die Maker position. He was 67 years old at the time of recall. He is currently the only Die Maker employed by AZ Automotive covered by the STT Agreement. In the event AZ Automotive needs to recall more Die Makers under the STT Agreement, Hirsch is the first in line for recall.[3]

Of the 19 Die Makers other than Hirsch currently on layoff, five are under 40 years old and 14 are younger than Hirsch. Of the 16 Tryout Troubleshooters who are currently employed, 14 are over 40 years old and 4 are the same age or younger than Hirsch. This includes Bill Koza, see n. 2 supra, who was promoted to Tryout Troubleshooter on February 6, 2006 at the age of 62.

On February 27, 2006, Hirsch filed a grievance regarding his layoff, stating:

> I was stripped of by DM-L Die Maker Tryout Troubleshooter position with no justification. I was laid off, even though I had the second highest seniority in this classification. I lost my job of 25 years to lower seniority workers and new hires.

---

[3] At the hearing on AZ Automotive's motion, counsel for AZ Automotive advised that Hirsch was recently called back to work.

Although Hirsch refers to seniority, the grievance does not mention age discrimination and the grievance proceeded as a contract violation relating to seniority AZ Automotive denied the grievance on the basis that Hirsch had been "assigned to the Die Maker Classification as per the contract language giving management the sole discretion to do so. The employee was laid off in accordance with contract language under Article VII, seniority based on the date of entry seniority. There is no contract violation . . . "

On August 3, 2006, the grievance went to arbitration and a hearing was held before an arbitrator. On August 14, 2006, the arbitrator issued a decision in favor of AZ Automotive, i.e. that AZ Automotive had the right to move employees in and out of the Tryout Troubleshooter category regardless of seniority. At no time during the grievance process did Hirsch mention age discrimination.[4]

On August 21, 2006, Hirsch filed an EEOC charge, claiming age discrimination as a result of his demotion and subsequent layoff. On December 26, 2006, the EEOC dismissed the charge and issued a right to sue letter. The EEOC explained in part that "[b]ased on the evidence, the EEOC is unable to conclude that you were discriminated against by Respondent because of your age."

In December 2006, Swafford evaluated all of the Tryout Troubleshooters,

---

[4]Hirsch then apparently appealed the handling of his grievance by the union, particularly representative Mike Stone. The appeal was denied in an undated decision appearing as Exhibit 10 to AZ Automotive's summary judgment papers. In August 2006, Hirsch filed an unfair labor practice charge against AZ Automotive alleging that AZ Automotive "has not followed seniority when deciding which employees to lay off and . . . favored certain employees because of their former Union status." He also filed a separate charge of unfair representation against his union at the same time. The NLRB dismissed the charges in October of 2006. Hirsch also wrote four letters to Ron Gettlefinger, President of the UAW. Hirsch does not mention age discrimination in any of the letters.

including those, like Hirsch, who were on layoff. Swafford rated Hirsch and three other employees, Gustafson, Scharf, and Gosselin, as the lowest performing. Hirsch was given the "needs improvement" rating, the lowest possible, in the following categories: attitude; problem solving; knowledge of prog dies; 1st PCS prog die, 1st PCS line dies; troubleshooting prog dies; and troubleshooting line dies. Hirsch disagrees with Swafford's evaluation.

Hirsch later filed the instant action claiming age discrimination in both his demotion to Die Maker and lay off.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d

6

335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Analysis

A.

Michigan's Elliot Larsen Civil Rights Act (ELCRA) prohibits an employer from discharging an employee because of or age. See M.C.L. § 37.2202(1)(a). Claims under the Elliot-Larsen Act are generally subject to the same evidentiary burdens as claims for employment discrimination under the Age Discrimination in Employment Act. McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir.1990); .

The state and federal courts have recognized that an age discrimination claim can be established by presenting direct evidence of intentional discrimination, or by providing

7

circumstantial evidence of disparate treatment on a discriminatory basis. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 n. 4 (6th Cir.1992) (holding that a prima facie case of discrimination can be stated under the ADEA by presenting either direct evidence of intentional age discrimination or indirect evidence of disparate treatment on the basis of age, but finding no discrimination because the employer successfully presented a legitimate, nondiscriminatory and nonpretextual reason for the discharge)

Here, because Hirsch does not identify any direct evidence of discrimination, he must make out an age discrimination claim based on circumstantial evidence under the guidelines established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Hirsch must show that he is (1) a member of a protected class (between 40 and 70), (2) was subjected to an adverse employment action, (3) was qualified for the position from which she was rejected or terminated, and (4) either replaced by a person from outside the protected class, or treated differently than a similarly situated employee from outside the protected class under circumstances that give rise to an inference of unlawful discrimination. See Mitchell, 964 F.2d at 582; Lytle v. Malady, 458 Mich. 153, 172-73 (1998). Where, an employee is laid off in part of a reduction in force[5] "the fourth prong is modifies so that the plaintiff must provide 'additional direct, circumstantial or statistical evidence tending to indicate that the employer singles out [the plaintiff] for impermissible reasons.'" Bender v. Hecht's Dep't Stores, 455 F.3d 612, 620 (6th Cir. 2006) (quoting

---

[5]Hirsch disputes that this is a reduction in force case. Based on the uncontroverted evidence as to AZ Automotive's decline in business and the automation of its lines decreasing its need for employees, the Court concludes that the standard fo a reduction in force case applies. Even if a reduction in force was not involved, however, Hirsch has not made out a prima facie case, as explained infra.

8

Rowan v. Lockeheed Martin Energy Sys., Inc., 360 F.3d 544, 371 (6th Cir. 2004)). See also Meagher v. Wayne State Univ., 565 N.W.2d 401, 403 (Mich. Ct. App. 1997) (stating that "[i]t is true that plaintiffs who are discharged during reductions in force are required to adduce additional proofs in order to establish discrimination).

If Hirsch establishes a prima facie case, the burden of persuasion shifts to AZ Automotive to present a legitimate non-discriminatory reason for the challenged employment decision. Should AZ Automotive carry this burden of persuasion, then the burden returns to Hirsch to prove by a preponderance of the evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer" toward him. Lytle, 458 Mich. at 176.[6]

B.

AZ Automotive says that Hirsch cannot make out a prima facie case he cannot establish the fourth prong of a prima facie case – replacement by a member outside the protected class. AZ Automotive says that Hirsch was not replaced by anyone, much less a younger employee. The Court agrees. The record contains Swafford's affidavit, in which he states that Hirsch was not replaced by anyone when he was laid off. Hirsch's reliance on Bill Koza, who was promoted to Tryout Troubleshooter around the time Hirsch was demoted, is unavailing. Koza was 62 years old at the time, nearly six years older than Hirsch. To establish age discrimination, Hirsch must show that he was treated

---

[6]Michigan law differs from federal law on the issue of pretext. Under federal law, pretext is established where a plaintiff shows the proffered reason is unworthy of belief. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147-48 (2000). Michigan, on the other hand, follows the "pretext plus" requirement which requires a showing that the proffered reason was pretextual and that discrimination was a motivating factor in the decision.

less favorably than a younger person.  Hirsch's conclusory assertion that other lesser qualified younger employees were retained in the Tryout Troubleshooter position is insufficient, as Hirsch has no specific evidence regarding other such employees, nor has he identified them.

Moreover, Hirsch has not shown that he was treated differently than similarly situated younger workers.  Two of Tryout Troubleshooter employees - Scharf and Gosselin - are younger than Hirsch and were treated the exactly the same way by being placed on layoff.

Hirsch also has no evidence to show he was singled out because of his age as required in a reduction in force case.  Overall, Hirsch has not made out a prima face case of age discrimination sufficient to survive summary judgment.

Even assuming Hirsch had established a prima facie case, AZ Automotive has provided legitimate non-discriminatory reasons both for demoting Hirsch and laying him off - Hirsch's performance issues and a lack of work.  Hirsch has not shown that these reasons were pretextual.  Indeed, Hirsch admits that there were some Tryout Troubleshooters who were older than him and remained in that classification after he was demoted.  Indeed, 4 of the 13 persons who remained Tryout Troubleshooters were older than Hirsch.  He also admits that younger Tryout Troubleshooters were demoted like him.  Also, Gustafson, who is older than Hirsch, was recalled from layoff.  Hirsch himself has now been recall.  None of the other Die Makers younger than Hirsch have been recalled and Hirsch himself is first in line for recall if needed.  The fact that some Tryout Troubleshooters remained following Hirsch's demotion that were younger than him does not establish pretext under the circumstances.  Hirsch also had not provided

any evidence indicating that Swafford was predisposed to discriminate on the basis of age.

Put simply, the record is simply devoid of evidence that would allow a reasonable juror to find that Hirsch was demoted or laid off because of his age

SO ORDERED.

      s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: January 10, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 10, 2008, by electronic and/or ordinary mail.

      s/Julie Owens
Case Manager, (313) 234-5160